UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLEN SELBST, et al. | )<br>)<br>) |
| Plaintiffs, | )<br>) Hon. Blanche M. Manning |
| v. | )<br>) Case No. 04 C 2422<br>) (Consolidated) |
| McDONALD'S CORP. et al. | )<br>) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

The court previously declined to grant defendants' motion to dismiss based upon assurances from the plaintiffs that they could amend their complaint to add specificity to their allegations of securities fraud. The plaintiffs amended, but have failed to add the required specificity. As a result, for the reasons that follow, the court grants the defendants' motion to dismiss.

**I.     BACKGROUND**

The plaintiffs filed this proposed class action on behalf of shareholders who acquired stock in defendant McDonald's Corporation between December 2001 and January 2003. The plaintiffs allege that McDonald's and two top executives—CEO Jack Greenberg and CFO Matthew Paull—made materially false or misleading public statements in violation of both section 10(b) of the Securities Exchange Act of 1934, *see* 15 U.S.C. § 78j(b), as well as Securities and Exchange Commission Rule 10b-5, *see* 17 C.F.R. § 240.10b-5. Additionally, the plaintiffs allege control person liability against defendants Greenberg and Paull under § 20(a) of the 1934 Act. *See* 15 U.S.C. § 78t(a).

A.  **Scheme To Defraud**

In its order denying an earlier motion to dismiss, the court extensively recounted the scheme to defraud alleged by the plaintiffs. The court will not repeat all of the details here; suffice it to say that the scheme allegedly consisted of two categories of financial statements made by the defendants. First, the plaintiffs alleged that the defendants made optimistic predictions (forward-looking statements) about McDonald's continued sales growth, even though they knew that the predictions were unattainable. Second, according to the complaint, the defendants followed their optimistic predictions with rosy quarterly results (historical statements) which met Wall Street's expectations, but which the defendants knew were false. The plaintiffs contend that as a result of the defendants' feel-good financial statements, McDonald's stock price jumped 15%. But by the end of the class period, these predictions had turned out to be less than prophetic and the stock price took a beating.

1.  **Forward-Looking Statements**

Defendants allegedly issued "materially false and misleading" earnings projections for 2002. While announcing fourth-quarter earnings on December 14, 2001—the first day of the class period—Greenberg stated that "we expect 2002 earnings per share of $1.47-$1.54" as well as a "5% to 10% projected growth over 2001's estimated [] earnings." Over the course of the class period—which ended January 22, 2003—the defendants repeated the earnings projections at least five more times:

* On January 24, 2002, as McDonald's released its disappointing 2001 full-year financials, it issued a press release reiterating its earnings projections;

* On March 22, 2002, Paull stated in a conference call with analysts that "McDonald's was still well within range of our [2002 earning] expectations;"

2

*   On April 18, 2002, while reporting that first-quarter earnings were slightly ahead of analysts' expectations, Greenberg again confirmed his earnings and growth projections;

*   On June 17, 2002, while announcing that second-quarter results exceeded predictions, Greenberg reiterated McDonald's earnings projections; and

*   On July 24, 2002, while reporting that second-quarter earnings increased 15% over the previous year, Greenberg stated that "[w]e expect 2002 annual earnings per share of $1.47 to $1.53."

Additionally, plaintiffs allege that on September 17 and October 22, 2002, although McDonald's acknowledged lower earnings, it still inflated its earnings projections by stating that it expected earnings per share of $1.43 in 2002. The plaintiffs allege that each time the defendants repeated their rosy projections, they did so knowing that, in actuality, "McDonald's domestic and international operations were suffering from a host of serious adverse factors . . . causing the Company to experience declining financial results and declining growth."

### 2. Historical Statements

The plaintiffs allege that in order to make it appear that the earnings projections were on target, the defendants inflated actual reported earnings for the first half of 2002 by failing to record or report: (1) $170 million in costs associated with a computer system known as "the Innovate Project"; (2) $402 million in "asset impairment charges" for hundreds of "underperforming restaurants"; and (3) millions of dollars in "franchise receivables" even though McDonald's had previously agreed not to collect them. According to the plaintiffs, failing to incorporate these expenses violated generally accepted accounting principles, which in turn led to overstated earnings.

## B. Earlier Motion To Dismiss

Many of the plaintiffs' allegations are made on information and belief. The plaintiffs' information and belief, in turn, is purportedly based upon details they received from a confidential informant ("CI"), initially described only as "a former accounting and financial reporting executive." The defendants found plaintiffs' description of CI lacking, and moved to dismiss the plaintiffs' complaint for lack of specificity that is required of securities fraud allegations.

To avoid dismissal, plaintiffs for the first time elaborated about CI in their brief opposing the motion to dismiss ("response brief"). In that brief, the plaintiffs described the CI as "a former employee of the Company who was responsible for accounting and financial reporting." The plaintiffs also asserted that CI's job function was, "among other things, to oversee financial reporting." Finally, the plaintiffs purported to confirm "that this witness served in a position such that he would possess the information alleged." The plaintiffs also suggested that they could amend their complaint to add even more details about CI, including that "he was employed at McDonald's Headquarters, was employed at the Company for 30 years, left the Company in late December 2002, and regularly interacted with the Individual Defendants."

In denying the earlier motion to dismiss, the court directed the plaintiffs to amend their complaint to add the facts asserted in their response brief but that had not yet been alleged. But, "in the interest of time," the court decided the motion to dismiss as though the facts detailed in the plaintiffs' response brief had been alleged in the complaint. The court's decision relied heavily on facts not alleged in the complaint, including plaintiffs' assertions that (1) CI's primary function was to oversee financial reporting; (2) CI regularly interacted with Greenberg

4

and Paull; (3) because of CI's position within McDonald's, he had first-hand knowledge that Greenberg and Paull had based their growth projections on what Wall Street wanted, rather than on actual data; (4) that no data supported the growth projections Greenberg and Paull had delivered; and (5) internal financial reports contradicted the growth projections Greenberg and Paull were making, and that Greenberg and Paull were aware of the internal financial reports and had reviewed them with CI.

### C. First Amended Complaint

Although the plaintiffs filed a first amended complaint, in it they added few of the facts they had asserted in their response brief, and virtually none of the facts that the court relied upon when denying the motion to dismiss. Specifically, the plaintiffs added only that CI was "a director of financial consulting," "a director of accounting," employed at McDonald's headquarters for 20 years, and that he left at the end of 2002. Missing are the assertions the court found most critical—that CI's primary function was to oversee financial reporting, that he regularly interacted with Greenberg and Paull, that he reviewed an internal fiancial report with Greenberg and Paull, that no data supported Greenberg and Paull's growth projections, and that CI knew first-hand that Greenberg and Paull were aware that their growth projections were unfounded.

Based upon the plaintiffs' failure to allege in the first amended complaint all of the assertions they previously made, the defendants filed a motion to dismiss the first amended complaint. In it, the defendants contend that the entire complaint must be dismissed because all of the allegations depend upon CI, yet the plaintiffs' have failed to properly support CI's basis for knowing any of the information he claims to know. For their part, the plaintiffs do not

5

appear to dispute that their additional allegations fall short of what was promised. Instead, they contend that the missing allegations were not crucial to the court's decision denying the earlier motion to dismiss, and that the first amended complaint is properly pleaded.

## II. ANALYSIS

Before evaluating the allegations of the first amended complaint, the court will first review the heightened pleading requirements for complaints alleging securities fraud. Normally, a complaint will survive a motion to dismiss as long as it is "possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief." *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001). But in some instances, complaints are subject to heightened pleading requirements. For instance, complaints alleging securities fraud must comply with the requirements of the Private Securities Litigation Reform Act of 1995. *See* 15 U.S.C. 78u-4(b). Under the PSLRA, a securities fraud complaint must: (1) "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed;" and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1), (2). In other words, the plaintiff must allege facts that (1) specify the misrepresentation or error; and (2) support an inference of scienter.

Because many of the plaintiffs' allegations are made on information and belief, specifically on information obtained from a confidential source, they face an additional pleading hurdle. While the the PSLRA does not require them to name their confidential source, they must

6

nevertheless describe the source "with sufficient particularity 'to support the probability that a person in the position occupied by the source would possess the information alleged.'" *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 596 (7th Cir. 2006).

With all that in mind, the court turns to the plaintiffs' two categories of allegations, (1) forward-looking statements, and (2) historical statements.

### A. Forward-Looking Statements

A "forward-looking" statement is one whose truth or falsity cannot be determined until after the statement has been made. *Harris v. Ivax Corp.*, 182 F.3d 799, 805 (11th Cir. 1999). Examples include statements: (1) "containing a projection of revenues" or other financial items; (2) "of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;" (3) "of future economic performance;" and (4) "of the assumptions underlying or relating" to the aforementioned statements. 15 U.S.C. § 78u-5(i)(1).

A "forward-looking statement" is actionable if it "was not made in good faith or was made without a reasonable basis." *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1333 (7th Cir. 1995) (remanding to district court for a determination of whether "the forward-looking statements . . . were unreasonable in light of the facts known at the time"). When making a forward-looking statement, the speaker must "speak the whole truth." *Id.* at 1331. In other words, a speaker is liable if the statement contains an omission of a known material fact which makes the affirmative statement misleading or false, *Kas v. Caterpillar, Inc.*, 815 F. Supp. 1158, 1171 (N.D. Ill. 1992), or "unreasonable," *Stransky*, 51 F.3d at 1335. Information is "material" if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed

7

by the reasonable investor as having significantly altered the total mix of information available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988). A defendant may be liable for issuing a future projection of earnings if the defendant "ignored facts seriously undermining the accuracy of the forecast." *Good v. Zenith Elecs. Corp.*, 751 F. Supp. 1320, 1322 (N.D. Ill. 1990). *See also In re Next Level Sys., Inc.*, No. 97 C 7362, 1999 WL 387446, at *7-8 (N.D. Ill. Mar. 31, 1999).

As discussed earlier, the plaintiffs allege that the defendants made forward-looking statements on multiple occasions projecting 5 - 10% sales growth, even though they knew such growth was unattainable. The court previously concluded that the plaintiffs had sufficiently alleged that the defendants' projections were misrepresentations made with scienter. But the court must now revisit those conclusions because they rested heavily on statements attributed to CI. Specifically, the court relied upon CI's assertions that (1) the defendants' projections were unfounded, and (2) the defendants knew that the projections were unfounded because (a) internal financial reports projected *declining* sale growth; and (b) Greenberg kept promising sales growth in order to meet Wall Street's expectations, even though everyone at McDonald's knew that growth could not be achieved.

The court concluded that the plaintiffs had sufficiently alleged that CI was someone who would have the information he claimed to have based in part upon the allegation in the complaint that he was "a former accounting and financial reporting executive." However, the court relied most heavily upon assertions *not* in the complaint, including characterizations in the response brief that CI "was responsible for accounting and financial reporting," "over[saw] financial reporting," and "served in a position such that he would possess the information alleged." As the court also noted, the plaintiffs contended in their response brief that CI had first-hand

8

knowledge of McDonald's financial predicaments, regularly interacted with both Greenberg and Paull and, in fact, viewed the internal financial reports discussed above together with Greenberg and Paull.

Despite the court's direction to amend the complaint to add these assertions, the plaintiffs failed to do so. Instead, the first amended complaint describes CI as merely "a director of financial consulting" and "a director of accounting." Allegations that CI was *a* director of financial consulting and accounting (presumably one of many) do not lead to a conclusion that CI would have known about McDonald's overall financial health. These allegations are a far cry from how the plaintiffs portrayed CI in their response brief, where they claimed he was *responsible for* and *oversaw* financial reporting. The person in charge of financial reporting is likely to know a company's overall financial health, whereas a director may know only discrete aspects. In the first amended complaint, the plaintiffs also back off their assertion that CI regularly interacted with Greenberg and Paull. As it stands, the complaint alleges no facts to support a conclusion that CI was privy to what the defendants knew.

Nevertheless, the plaintiffs argue that they have alleged enough facts to support their claims because they have added to their complaint the facts about CI they asserted in their response brief. Specifically, the plaintiffs contend that they have added most of the facts they offered in a footnote in their response brief, including that: (1) CI was employed at McDonald's headquarters; (2) he worked there for 30 years (though the complaint alleges 20 years); and (3) he left McDonald's in late December 2002. The plaintiffs dismiss the importance of a fourth fact found in the footnote—that CI regularly interacted with Greenberg and Paull—conspicuously missing from the first amended complaint.

9

The plaintiffs argue that by including the facts offered in their footnote, their complaint now comports with their assertions about CI. But the plaintiffs take too narrow a view of the assertions about CI in the response brief that the court relied upon. Nowhere did the court direct the plaintiffs to add only those facts asserted in their footnote, to the exclusion of facts asserted in the rest of the response brief. To the contrary, the court directed the plaintiffs to incorporate "all of these facts [that] are not in the Complaint." Critical facts remain missing from the first amended complaint. For instance, as discussed above, the court relied upon the assertion that CI had first-hand knowledge that the defendants based their projections on what Wall Street wanted, rather than on internal forecasts that did not support the defendants' projections. Also according to the response brief, CI reviewed that internal financial reports with the defendants, and had first-hand knowledge that no data supported the growth forecasts the defendants made. Yet, despite the importance the court attributed to such assertions, the plaintiffs neglected to add them to the first amended complaint.

As a result, the first amended complaint contains no allegations of fact to support either that (1) the forward-looking statements were misrepresentations when made, or (2) the defendants projected growth that they knew could not be achieved. Accordingly, in the absence of adequate allegations of misrepresentations and scienter, the plaintiffs have not sufficiently alleged facts to support their claims based upon forward-looking statements.

### B. Historical Statements

In addition to forward-looking statements, the plaintiffs contend that several of McDonald's historical statements, specifically actual earnings reports, contained actionable

misstatements and omissions because they overstated earnings by using improper accounting methods that violated generally accepted accounting principles ("GAAP").

In contrast to a forward-looking statement, a historical statement describes the company's past performance—such as financial results for a prior quarter. *Stransky*, 51 F.3d at 1331. To allege that a historical statement violated section 10(b), the plaintiff must set forth sufficient facts to show that "the statement [was] either false or misleading because of [] omitted information." *Kas*, 815 F. Supp. at 1170.

Where plaintiffs allege that historical statements were misleading because the financial results were overstated and computed in violation of GAAP, the plaintiffs must plead the GAAP violations with sufficient particularity. *See In re Midway Games, Inc. Securities Litig.*, 332 F. Supp. 2d at 1169. General allegations that the defendants' "accounting practices . . . resulted in a false report of [the] company['s] earnings is not a sufficiently particular claim of misrepresentation." *Id.* Instead, plaintiffs must allege: (1) the particular financial transaction which caused the alleged misstatement of earnings; (2) the amount of the overstatement and the effect it had on the company's earnings; (3) the applicable accounting principle(s) applied by the company and why they were improperly applied; and (4) the defendant was responsible for calculating and/or disseminating the allegedly incorrect financial information. *See id.*; *Clark v. TRO Learning, Inc.*, 1998 WL 292382, at *2 (N.D. Ill. May 20, 1998); *In re K-Tel Int'l, Inc. Sec. Litig.*, 107 F. Supp. 2d 994, 999 (D. Minn. 2000); 3C Sec. & Fed. Corp. Law § 16:89 (2d ed. 2005).

The plaintiffs' claim is based upon three alleged GAAP violations. First, the plaintiffs allege that the defendants improperly capitalized $170 million in costs incurred while developing

software, a venture known as the Innovate Project. Second, the plaintiffs contend that the defendants failed to "timely write down" the value of hundreds of "underperforming restaurants." Third, the plaintiffs allege that the defendants manipulated "certain accounting accruals and loss reserves."

The court previously concluded that the plaintiffs had adequately alleged both misrepresentation and scienter regarding the defendants' alleged failure to properly account for Innovate Project costs, and the diminished value of underperforming restaurants. The court also concluded that the plaintiffs had adequately alleged the manipulation of accrual and loss reserves due to recording lease payments owed by Brazilian restaurants as revenue, even though the defendants had excused the restaurants from making the lease payments and knew that McDonald's would never collect. The court concluded that the plaintiffs had failed to adequately allege two other alleged schemes to manipulate accrual and loss reserves—one involving the timing of store sales, and the other involving the insurance reserves converted into revenue. In light of the plaintiffs' failure to add the promised allegations about CI, the court now reevaluates whether the allegations about the Innovate Project, the underperforming restaurants, and the Brazilian lease payments adequately alleged misrepresentation and scienter.

1. **Misrepresentation**

The plaintiffs' allegation that McDonald's accounting of the Innovate Project amounted to a misrepresentation is not based upon information from CI. Instead, the allegations are based upon publicly available information such as McDonald's January 2003 announcement that it was terminating the Innovate Project and would be writing off more than $170 million in research and development costs. According to the plaintiffs, McDonald's failed to disclose any costs

associated with the Innovate Project in any of its financial statements before terminating the program. Instead, according to the plaintiffs, what should have been recorded as costs in the financial statements were actually recorded as assets on McDonald's balance sheets.

Likewise, the plaintiffs' allegation that McDonald's misrepresented the performance of some of its overseas restaurants was also based upon publicly available information. The pertinent, publicly available information included: (1) the severe and persistent economic difficulties plaguing McDonald's Latin American restaurants; (2) the elimination by Argentina between its peso and the U.S. dollar, which caused a dramatic decline in the value of McDonald's Argentine investments; (3) the Mad Cow scare that swept Europe and caused beef consumption to decrease dramatically; (4) the combination of Mad Cow and Severe Acute Respiratory Syndrome scares that swept Japan; and (5) inadequate customer service and store disrepair that plagued McDonald's U.S. restaurants.

On the other hand, the plaintiffs' allegation about Brazilian lease payments was based upon information obtained from CI. Specifically, CI was the source of the plaintiffs' allegation that McDonald's agreed not to collect lease payments from the Brazilian restaurants as economic conditions continued to deteriorate in that country. Without that information from CI, the first amended complaint lacks any facts to support the allegation that the defendants had agreed not to collect the Brazilian lease payments.

In sum, the court concludes that while the plaintiffs have failed to sufficiently allege facts supporting their allegation that McDonald's accounting of Brazilian lease payments was a misrepresentation, they have adequately alleged that McDonald's accounting of the Innovate Project costs and underperforming restaurants were misrepresentations. However, to avoid

13

dismissal, the plaintiffs also needed to have adequately alleged scienter, which the court examines next.

## 2. Scienter

In addition to alleging a misrepresentation or omission, the PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The required state of mind under section 10(b) is scienter, which the Supreme Court has defined as a "mental state embracing an intent to deceive, manipulate, or defraud." *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194 n.12 (1976). In determining whether plaintiffs have properly pleaded scienter, courts must "examine all of the allegations in the complaint and then [] decide whether collectively they establish such an inference." *Makor*, 437 F.3d at 601.

The court previously concluded that the plaintiffs' allegations about the defendants' opportunity and motive to commit fraud did not support an inference of scienter. However, the plaintiffs had raised an inference of scienter by alleging that the defendants had "actual knowledge" of non-public information, specifically, internal financial reports, which either contradicted the historic statements, or suggested that they were inaccurate or misleading. Such allegations constitute "classic evidence of scienter." *In re Neopharm, Inc. Sec. Litig.*, 2003 WL 262369, at *14 (N.D. Ill. Feb. 7, 2003) (finding the scienter recklessness requirement met where plaintiffs alleged facts that the public statements were made while defendants were "in possession of non-public information that directly contradicted [these] statements"). *See also In re Sensormatic Electronics Corp. Sec. Litig.*, 2002 WL 1352427, at *6 (S.D. Fla. June 10, 2002) ("where defendant publishes a statement at a time he is in possession of or has access to facts

suggesting that the statement is inaccurate, misleading, or incomplete . . . is . . . a classic fact pattern giving rise to a strong inference of scienter"). The court also held that the plaintiffs had bolstered the inference of scienter by alleging that the defendants violated GAAP while preparing McDonald's financial statements. Once again, however, the court must revisit this conclusion based upon the plaintiffs' failure to amend their complaint as directed.

The court's conclusion that the plaintiffs had alleged scienter in the earlier complaint was based in part on CI's description of internal financial reports that purportedly contradicted the defendants' historical statements. But the plaintiffs' amendments have failed to allege facts detailing how CI knew the contents of those financial reports, or how he knew that Greenberg or Paull ever saw them. Therefore, CI's unsupported statements about internal financial reports that contradicted the defendants' historical statements do not give rise to an inference of scienter. The plaintiffs' remaining allegations also fail to support an inference of scienter. For example, the plaintiffs rely upon the defendants' purported GAAP violations, but violations of accounting principles do not give rise to a strong inference of scienter. *See In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 389-90 (4th Cir. 2005) ("general allegations of GAAP and GAAS violations fail to satisfy the scienter requirements.") (internal quotations and citation omitted); *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 713-14 (N.D. Ill. 2005) ("While violations of GAAP provide some evidence of *scienter,* they fall far short of raising a strong inference of knowing or reckless misrepresentation.") Likewise, the plaintiffs attempt to establish scienter based upon Greenberg and Paull's high-level positions within McDonald's is also inadequate. *See Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827, 837 (N.D. Ill. 2000) ("pleading scienter based exclusively on a defendant's corporate position is insufficient to survive a motion to dismiss.")

After examining all of the allegations of the first amended complaint, viewing them in a light most favorable to the plaintiffs, and considering the allegations collectively, the court concludes that the plaintiffs have not created a strong inference of scienter. Accordingly, the plaintiffs have failed to sufficiently plead their claims that the defendants' historical statements were made with scienter, and therefore those claims shall also be dismissed.

## III. CONCLUSION

The court previously denied the defendants' motion to dismiss based upon the plaintiffs' representations about allegations they could add to their complaint based upon information they received from a confidential informant. The court extended the plaintiffs the opportunity to amend their complaint to add the allegations they represented they could make, but the first amended complaint contains virtually none of those allegations.

As it stands, the plaintiffs have failed to allege facts that, if true, would establish their claims of fraud. Accordingly, the motion to dismiss [54-1] is GRANTED. In reaching this decision, the court took into account the arguments in the plaintiffs' surreply and the defendants' response to the surreply; accordingly the plaintiffs' motion to file a surreply instanter [78-1] is GRANTED.

The dismissal is without prejudice, and the plaintiffs' request for leave to file an amended complaint is granted. Any amended complaint must be filed by June 2, 2006. Although this dismissal is without prejudice, the court warns the plaintiffs that any future dismissal for failing to allege facts establishing CI's basis for possessing the information alleged will be with prejudice.

ENTER:

DATE: May 17, 2006

Blanche M. Manning
United States District Judge